

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GROVER SELLERS
ATTORNEY GENERAL

Honorable Fred L. Blundell
District Attorney
22nd Judicial District
Lockhart, Texas

Dear Sir:

Opinion No. 0-6764
Re: Whether certain crude oil
held in storage on January
1, 1945, is subject to tax-
ation by Luling Independent
School District; and if con-
sidered in transit, what is
the maximum length of time it
can be held in storage without
being taxable?

In your letter of August 25, 1945, you have requested
an opinion from this office relative to the above subject. The
pertinent paragraphs of your letter are quoted:

"An oil company 'A' has a tank farm located
in the Luling Independent School District. Company
'A' also operates a pipe line. A part of the tank
farm is used by the pipe line to store crude oil and
the other part is used by the company to store crude
oil. On January 1st, 1945 company 'A' reported having
a certain number of barrels of crude oil in storage
at Luling, in the school district, subject to be ren-
dered for taxes. The number of barrels of crude oil
reported by company 'A' was considerably less than
the number reported by the Railroad Commission. When
the officers of Company 'A' were asked about the dif-
ferences they stated that a part of the oil which was
in storage at Luling did not have 'situs' in the Luling
School District and therefore was not taxable by the
district.

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

"We should appreciate your opinion on the following questions:

"(1) Is all crude oil which is held by company 'A' in storage at the Luling tank farm on January 1, 1945 subject to taxation by the Luling Independent School District?

"(2). If a part of the oil held in the Luling tank farm on January 1, 1945 is in transit and not taxable by the Luling School District, how long may it be held in storage at the Luling tank farm and not be subject to taxation by the Luling Independent School District?"

Without more details regarding the storage of the oil in question, a definite answer to the questions presented is difficult. The statement by the company that the situs of the oil in question was not in the school district is a conclusion with which, in the absence of knowledge of the facts on which such conclusion was based, neither concurrence nor disagreement is possible. However, a disquisition of the principles here involved may serve to answer the questions generally without the submission of further detailed facts.

Assuming that the taxation in question concerns ad valorem taxes, the taxability of the oil in storage turns on a determination of the situs of such oil for taxation purposes.

Generally, the well-established common law maxim of "mobilia sequuntur personam" (movables follow the person) or the principles that personal property has its legal situs at the place of its owner's domicile has governed the taxation of tangible personal property. Although the Constitution of Texas (Article 8, Section 11) provides that "all property, whether owned by persons or corporations shall be assessed for taxation, and taxes paid in the county where situated", it has been held by the Supreme Court of Texas that this provision is no more than a declaration of the common law rule in that "since it had reference to the taxing power, it evidently meant property where situated for the purposes of taxation under the general principles of law as then understood." (City of Fort Worth v. Southland Greyhound Lines, 67 S. W. (2d) 361; G. C. & S. F. Ry. Co. v. City of Dallas, 16 S. W. (2d) 292;

Hon. Fred L. Blundell, Page 3

Great Southern Life Ins. Co. v. City of Austin, 243 S. W. 778;
City of Galveston v. Haden, 214 S. W. 766; Ferris v. Kimble,
12 S. W. 639). This interpretation is said also to apply to
Article 7153, Revised Civil Statutes of Texas, as amended, en-
acted pursuant to the above constitutional provision (see cases
supra), which provides:

> "All property, real and personal, except such
> as is required to be listed and assessed otherwise,
> shall be listed and assessed in the county where it
> is situated; and all personal property, subject to
> taxation and temporarily removed from the State or
> county, shall be listed and assessed in the county
> of the residence of the owner thereof, or in the
> county where the principal office of such owner is
> situated."

However, the principle that the taxable situs of
personal property is at the residence of the owner is not without
exceptions and it appears well settled that tangible personal
property may acquire a situs for taxation elsewhere than the
owner's domicile. (Galveston v. Haden, supra, and 51 Am. Jur.
Sec. 451, p. 466). It is said that the situs of tangible per-
sonal property depends on the character of its use (G.C. & S.F.
Ry. Co. v. City of Dallas, supra) and that the test is whether
or not the property is situated within the jurisdiction solely
for use and profit there. (51 Am. Jur., Sec. 454, p. 469 and
cases cited).

The principles governing the situs of personal
property in connection with the State's power of taxation apply
generally to the situs of such property for the purposes of local
taxation (40 Tex. Jur., Sec. 22, p. 38) and clearly property in
transit or only temporarily in a jurisdiction other than that of
the owner's domicile does not acquire taxable situs in such juris-
diction (Fort Worth v. Southland Lines, supra; Ferris v. Kimble,
supra; 51 Am. Jur., Sec. 455, p. 469). Delays in transit, however,
may create taxable situs in a jurisdiction through which the property
passes and such turns on the nature and duration of the delay (51 Am.
Jr., Sec. 455, supra; Anno. 110 A. L. R., 724).

If the delay is incident to the transportation of the
property, no situs is acquired, but if the property is detained
in transit for a particular purpose or object other than its

transportation, situs is acquired in the jurisdiction where it was so detained. So it has been held that oil accumulated in the working tanks of a pipe line company by reason of congested traffic and the inability of the company's patrons to receive the production of the fields served did not acquire taxable situs in the county where it was held in storage (Cumberland Pipe Line Co. v. Commonwealth, 79 S. W. 2nd. 366). On the other hand, oil shipped from one jurisdiction to a second where it was to be separated and processed and then shipped to a third jurisdiction was held to acquire situs in the second jurisdiction since the purpose of the delay was not incident to its transportation (General Oil Co. v. Crain, 209 U. S. 211). It has also been held that grain shipped from southern to eastern states but removed from the cars in an intermediate state for the purpose of classification and sacking acquired taxable situs in the intermediate state (Bacon v. Illinois, 277 U. S. 504). In this last case the ownership of the grain and the right to dispose of it or divert its shipment in the intermediate State was considered a material factor.

The duration of the delay should bear a direct relation to previous practices and the usual course of the business under consideration. It has been said that permanency of location is not required to fix situs for taxation (G. C. & S. F. Ry. Co. v. City of Dallas, supra) and that the question is as much one of fact as of law (Griggsby Const. Co. v. Freeman, 32 So. 399). The concept of permanency in this regard is variable and one writer (confounded by the imperfection of words) described the location of property contemplated as "permanent for the time being". (51 Am. Jur., Sec. 454).

From the foregoing, it is apparent that the taxability, or taxable situs of the oil in question cannot be properly determined simply on the premise that it was stored on a certain date by an oil company or by a pipe line company. Nor can there be fixed an invariable time when the oil (if in transit at the outset) ceases to be transient and becomes "permanent." It is not impossible, however, to consider the questions in the instant case contingently.

That portion of the oil which as of January 1, 1945, was stored incident to its transportation should be considered in transit and not taxable. Probative of its being in transit are such considerations as that (1) the tanks in which it was stored were an integral part of the pipe line transportation system and were so rendered for tax purposes, (2) the use of the tanks was exclusively for storage of oil in transportation or that the tanks were not used for storage for other purposes,

741

(3) the company's only interest in the oil was its transportation, (4) the ownership of the oil rested in some other firm or person, (5) the company was obligated to deliver it to a definite destination, (6) the company had no right to divert it to any use of its own.

That portion of the oil which as of January 1, 1945, was stored for purposes other than its transportation should be considered to have acquired situs in the school district and, therefore, taxable. Probative of such acquisition of situs are such considerations as that (1) the company owned the oil and had the right to use it for any purpose it might choose, (2) the tanks used were not a part of the pipe line system, (3) the storage was in tanks generally used for purposes other than transportation, (4) the oil was stored for purposes other than transportation such as separation, redistribution, consumption, sale, etc.

If any portion of the oil determined to be in transit at the outset was held or delayed in storage for a period of time entirely disproportionate to the usual periods in which oil has been previously held without some substantial reason therefor, it should be considered to have acquired situs for taxation in the school district. The reason for any delay should concern strictly the transportation of the oil such as break-downs or congested traffic.

It is hoped that the above may serve you in determining the taxability of the oil in the instant case by the school district. If it should not, it is suggested that a statement by the company together with facts pertinent to the above be submitted for further consideration.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By Jackson Littleton
Jackson Littleton
Assistant

JL:fb

APPROVED SEP 10 1945

FIRST ASSISTANT
ATTORNEY GENERAL

APPROVED
OPINION
COMMITTEE
BY
CHAIRMAN